**NET GLOBAL MARKETING, INC.; Albert Ahdoot, Plaintiffs–Appellees,**

v.

**DIALTONE, INC., Defendant–Appellant.**

**No. 04–56685.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 6, 2006.

Submission Withdrawn June 14, 2006.

Resubmitted Jan. 3, 2007.

Filed Jan. 9, 2007.

Paul S. Sigelman, Esq., Sigelman & Perlman, Beverly Hills, CA, for Plaintiffs–Appellees.

Robert F. Scoular, Esq., Mark T. Hansen, Esq., Sonnenschein Nath & Rosenthal LLP, Los Angeles, CA, David M. Pernini, Esq., Wargo & French LLP, Atlanta, GA, for Defendant–Appellant.

Before: D.W. NELSON, RAWLINSON, and BEA, Circuit Judges.

MEMORANDUM *

Dialtone, Inc. ("Dialtone") appeals an order of the district court denying Dialtone's motion to dismiss or compel arbitration in proceedings against Net Global Marketing, Inc. ("Net Global"). The district court found the arbitration agreement in the contract unconscionable and hence unenforceable. We affirm.

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

■ As a threshold matter, our recent en banc decision in *Nagrampa v. Mail-coups, Inc.*, 469 F.3d 1257 (9th Cir. Dec.4, 2006), instructs that the district court properly considered Net Global's allegation that the arbitration provision was unenforceable. We opined:

> When the crux of the complaint is not the invalidity of the contract as a whole, but rather the arbitration provision itself, then the federal courts must decide whether the arbitration provision is invalid and unenforceable. The federal courts cannot shirk their statutory obligation to do so simply because controlling substantive state law requires the court to consider, in the course of analyzing the validity of the arbitration provision, the circumstances surrounding the making of the entire agreement.

*Id.* at 1264 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, —— U.S. ——, 126 S.Ct. 1204, 1209–10, 163 L.Ed.2d 1038 (2006)).

Net Global does not allege that the underlying service agreement between it and Dialtone is unconscionable or otherwise unenforceable. On the contrary, Net Global's complaint *relies* on the service agreement in bringing its first claim for relief alleging breach of contract. Although the substantive and procedural unconscionability arguments require us to look to circumstances external to the arbitration agreement itself, "where, as here, no claim threatens to invalidate or otherwise directly affect the entire contract, the federal court must decide claims attacking the validity of the arbitration provision, even if substantive state law requires an examination of the making of the entire contract as part of that analysis." *Nagrampa*, 469 F.3d at 1271.

Moreover, as was the case in *Nagrampa*, Net Global "emphasizes the substantively unconscionable aspects of the arbitration provision, arguing that the arbitration provision is one-sided."

*Id.* at 1277. While Net Global argues that the arbitration provision is procedurally unconscionable because it appears in the Terms of Service, "nowhere in [its] complaint does [it] seek rescission or invalidation of the entire contract." *Id.* Furthermore, it is clear that courts may consider issues relating to the making and performance of the agreement to arbitrate in determining whether an arbitration provision is enforceable. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). Therefore, it was proper for the court to decide whether the arbitration agreement was enforceable.

■ Next, as to the merits of arbitrability, the district court was correct to invalidate the arbitration agreement because it was unconscionable. If a contract is unconscionable, under California law courts may refuse to enforce it. *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir.2003). To be unenforceable, a contract or clause must be both procedurally and substantively unconscionable, but not necessarily in the same degree. *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir.2003). Instead, we apply a sliding scale: "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669, 690 (2000).

Unconscionability is ultimately a question of law. To the extent that there are conflicts in the evidence or in the factual inferences that may be drawn therefrom, a finding of unconscionability by the trial court will be upheld if it is supported by substantial evidence. *Patterson v. ITT Consumer Financial Corp.*, 14 Cal.App.4th

1659, 1663, 18 Cal.Rptr.2d 563 (Cal.Ct.App. 1993). If, however, there is no evidence extrinsic to the contract, no conflict in the extrinsic evidence, or the conflicting evidence is entirely written, a reviewing court is not bound by the finding of the trial court, but instead subjects the contract to independent review. *Id.*

Procedural unconscionability "concerns the manner in which the contract was negotiated and the circumstances of the parties at that time." *Kinney v. United HealthCare Servs., Inc.,* 70 Cal.App.4th 1322, 83 Cal.Rptr.2d 348, 352–53 (1999). Procedural unconscionability requires either of two factors: oppression or surprise. *Stirlen v. Supercuts, Inc.,* 51 Cal. App.4th 1519, 60 Cal.Rptr.2d 138 (1997). Oppression "arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice." *Id.* at 145. Net Global has not met its burden on this issue, for it has not pointed to any evidence indicating that it was faced with an "absence of reasonable market alternatives" in which an arbitration clause was not mandatory. *Morris v. Redwood Empire Bancorp,* 128 Cal. App.4th 1305, 27 Cal.Rptr.3d 797, 807 (2005).

Nevertheless, Net Global need not demonstrate oppression if it can show surprise. *Gutierrez v. Autowest, Inc.,* 114 Cal. App.4th 77, 7 Cal.Rptr.3d 267, 277 n. 8 (2003). Surprise is "a function of the disappointed reasonable expectations of the weaker party," *Harper v. Ultimo,* 113 Cal. App.4th 1402, 7 Cal.Rptr.3d 418, 422 (2003), and "involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Stirlen,* 60 Cal. Rptr.2d at 145.

The district court's finding that the arbitration provisions here meet California's test for surprise is supported by substantial evidence. The clause was located twelve pages into a seventeen page legal document; this document was not only "prolix" and "drafted by the party seeking to enforce the disputed terms," *id.,* but it was not even offered to Net Global in print or in the same form as the rest of the contract. The arbitration provisions were not "clearly disclose[d]," *see Wayne v. Staples, Inc.,* 135 Cal.App.4th 466, 37 Cal. Rptr.3d 544, 556 (2006), could easily have been "overlooked," *see Trend Homes, Inc. v. Superior Court,* 131 Cal.App.4th 950, 32 Cal.Rptr.3d 411, 417 (2005), and were never initialed or signed by either party, *see Gutierrez,* 7 Cal.Rptr.3d at 276. There was no "clear heading" in the Terms of Service that could refute a claim of surprise; to the contrary, the arbitration clause is listed in the midst of a long section without line breaks under the unhelpful heading of "Miscellaneous." Therefore, the arbitration provision was procedurally unconscionable, but we recognize that the degree of unconscionability is tempered by Net Global being a commercial entity, as opposed to a lay consumer.

In addition to procedural unconscionability, substantive unconscionability focuses "on overly harsh or one-sided results," *Armendariz,* 99 Cal.Rptr.2d 745, 6 P.3d at 690, and specifically on whether "the terms of the agreement ... are so one-sided as to shock the conscience." *Kinney,* 83 Cal. Rptr.2d at 353. In the case of arbitration agreements, at least a "modicum of bilaterality" is required. *Armendariz,* 99 Cal. Rptr.2d 745, 6 P.3d at 690. California courts "look beyond facial neutrality and examine the actual effects of the challenged provision." *Ting,* 319 F.3d at 1149.

The district court erred in looking to the liability limitation in the Terms of Service for the purpose of examining the substantive unconscionability of the arbitration agreement. *See Republic of Nic-*

*aragua v. Standard Fruit Co.,* 937 F.2d 469, 476 (9th Cir.1991) (*"Prima Paint* demands that arbitration clauses be treated as severable *from the documents in which they appear* unless there is clear intent to the contrary.") (emphasis added). However, unlike the limitation on liability, the unilateral modification clause in the Terms of Service is not language that courts must disregard. *Republic of Nicaragua,* 937 F.2d at 479. Indeed, the latter, unlike the former, goes to the "making and performance of the agreement to arbitrate" itself. *Id.* at 477. The effect of Dialtone's unilateral right to modify the arbitration clause is that it could, for example, craft precisely the sort of asymmetrical arbitration agreement that is prohibited under California law as unconscionable. *Armendariz,* 99 Cal.Rptr.2d 745, 6 P.3d at 694.

In any event, because the unilateral modification clause renders the arbitration provision severely one-sided in the substantive dimension, even moderate procedural unconscionability renders the arbitration agreement unenforceable. *Morris,* 27 Cal.Rptr.3d at 806. The unilateral modification "pervade[s]" and "taint[s] with illegality" the entire agreement to arbitrate, severance of terms within the arbitration clause would not cure the problem. *Circuit City Stores, Inc. v. Adams,* 279 F.3d 889, 895 (9th Cir.2002) (citing *Armendariz,* 99 Cal.Rptr.2d 745, 6 P.3d at 696, and Cal. Civ.Code § 1670.5(a)).

Therefore, we affirm the district court's finding that the arbitration agreement is unconscionable and unenforceable.

**AFFIRMED.**

I concur in the result.